Arnold KESSELMAN

v.

GULF OIL CORPORATION.

Civ. A. No. 79–3136.

United States District Court,
E. D. Pennsylvania.

Nov. 8, 1979.

Norman P. Zarwin, Zarwin, Baum, Arangio & Ross, P. C., Philadelphia, Pa., for plaintiff.

John T. Clary, Clary, Mimnaugh & McGonigle, P. C., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Arnold Kesselman, operates a gasoline service station as a lessee of Gulf Oil Corporation. Kesselman instituted this action against Gulf under the Petroleum Marketing Practices Act, 15 U.S.C.A. § 2801 *et seq.* (PMPA), and alleges that Gulf violated the PMPA when it failed to renew the plaintiff's lease agreement with Gulf. Be-

fore this Court is a motion by the plaintiff for a preliminary injunction that would order Gulf to maintain its relationship with the plaintiff until after a trial on the merits in this case. For the reasons hereinafter set forth, the plaintiff's motion for a preliminary injunction will be denied.

The evidence presented at the hearing held in connection with this motion shows that the plaintiff has operated a Gulf service station in Cornwells Heights, Bensalem Township, Bucks County, Pennsylvania since 1972 pursuant to a service station lease with Gulf. Gulf leases the ground on which the plaintiff's service station is situated from a third party. On April 3, 1977, the plaintiff entered into a service station lease with Gulf, which lease by its terms expired on April 2, 1978. The monthly rent under this lease was $460. This lease was renewed for the period between April 3, 1978 and April 2, 1979 at a rent of $530 per month. The lease contained a hold over clause which stated that

any holding over by Lessee at the end of this lease or at the end of any renewal or extension period without having first renewed or extended this lease in writing, shall not be considered as a renewal or extension of this lease for any period longer than one month.

Sometime in February or early in March of 1979, Gulf's representative contacted the plaintiff and reminded him that his lease was due to expire on April 2, 1979. In March, a new lease was sent to the plaintiff by Gulf. This new lease covered the period from April 3, 1979 to July 31, 1981, and provided for a rent of $670 per month for the first year of the lease and $800 per month for the remaining fifteen months of the lease. The plaintiff did not execute the new lease, claiming that the service station did not justify the increases in the monthly rental. Negotiations between the parties continued through April and into early May, but no agreement was reached. Gulf offered to reduce the rental figures to $650 and $780 per month, respectively, but the plaintiff would not accept and offered to pay no more than $550 per month and $570 per month, respectively. Gulf notified the plaintiff by a letter dated May 11, 1979 that, upon receipt of this letter, his lease was extended for ninety days under the then existing rental. This letter also contained the following notice:

2. Gulf Oil Company—U. S. hereby gives you formal notice as required by the Petroleum Marketing Practices Act that Gulf will not renew its lease and other related agreements with you effective at the end of the above-mentioned ninety day period. Upon our receipt of the signed U.S. Postal Service Receipt, Gulf will immediately confirm to you in writing the effective date of the lease expiration.

3. Gulf finds it must take the above action pursuant to Section 102(b)(3)(A) of the PMPA because our failure to agree on an acceptable rental increase was not the result of Gulf's insistence on such increase for the purpose of preventing a renewal but was, in fact, the result of your failure to agree to a term which was offered in good faith and in the normal course of business and which involved efforts on Gulf's part to compromise and negotiate the rental increase.

Attached is a summary of the PMPA which has been prepared by the Secretary of Energy.

Gulf sent the plaintiff a letter on May 16, 1979 that stated that the U.S. Postal Service receipt had been signed by the plaintiff on May 14, 1979, and that the lease would therefore expire on August 11, 1979 and would not be renewed after that date. The plaintiff filed suit in this Court on August 24, 1979.

The PMPA was enacted in 1978 in order to establish "minimum Federal standards governing the . . . nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel." [1978] *U.S.Code Cong. & Admin. News* 873, 873.[1] Congress recognized the

---

1. The parties are in agreement that the "service station lease" entered into by them created a franchise relationship. Under section 2801(1)(B) of the PMPA, the term "franchise" includes

(i) any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed

disparity of bargaining power that often exists between a franchisor and a franchisee, and therefore prohibited a franchisor from not renewing a franchise "unless the . . . nonrenewal is based upon a ground specified or described in the legislation and is executed in accordance with the notice requirements of the legislation." *Id.* at 874. Section 2802 of the PMPA states that a franchisor must renew a franchise relationship unless "(A) the notification requirements of section 2804 of this title are met; and (B) such . . . nonrenewal is based upon a ground described in . . . [Section 2802(b)(3)]." 15 U.S.C.A. § 2802(b)(1).

■ It is well established in this Circuit that in order to obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of eventual success in the litigation, and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. While the burden rests upon the moving party to make the above two requisite showings, the district court must take into account whenever relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *Constructor's Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978); *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975). The district court has broad discretion since its task involves weighing the benefits and burden that granting or denying the injunction will have on each of the parties and the public. *Penn Galvanizing Company v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir. 1972); *North Penn Oil and Tire Co. v. Phillips Petroleum Co.*, 358 F.Supp. 908, 919 (E.D.Pa.1973).

Congress, in enacting the PMPA, specifically provided in the act a different test for determining whether to issue a preliminary injunction. Section 2805(b)(2) states that the court shall grant a preliminary injunction if

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

The legislative history of the PMPA indicates that it was the intent of Congress, in enacting this statutory standard, to make it easier for a franchisee to obtain a preliminary injunction. The cases that have construed section 2805(b)(2) have not required a demonstration of irreparable injury, but have only balanced the hardships between the franchisor and the franchisee. *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302 (D.Minn.1979); *Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich.1978). We will not undertake this balancing test since we find that in this case there are no "sufficiently serious questions going to the merits."

■ The plaintiff initially contends that the notification requirements of section 2804 were not satisfied because Gulf did not provide the plaintiff with the statutory notice of its intention to not renew, as provided in section 2804(a) of the PMPA, prior to April 2, 1979. Section 2804(a) provides:

in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy.

Section 2801(2) of the PMPA defines "franchise relationship" as "the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise."

(a) Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—

(1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

Since the parties did not sign a new lease prior to April 2, however, the terms of the old lease established a month to month tenancy between the parties at the rent provided for in the lease. It appears, therefore, that Gulf furnished the plaintiff with the ninety day notice of nonrenewal as provided in section 2804(a); such notice was contained in Gulf's letter to the plaintiff dated May 11, 1979.

■ The plaintiff also contends that the month to month tenancy provision of the lease, which was activated by the plaintiff's holding over after April 2, 1979, is invalid under the following provision of the state law, *Pa.Stat.Ann.* tit. 73, § 202–4(4) (Purdon Supp.1979):

It shall be a violation of this act for any lessor supplier, directly or indirectly, through any officer, agent or employee to engage in the following practices:

.    .    .    .    .

(4) To require a lessee dealer to accept a lease for the premises of a term less than one year.

The plaintiff argues that the failure of the parties to renew their lease before April 2, 1979 automatically created a new lease for the period of April 3, 1979 to April 2, 1980 under state law. It would appear, however, that Gulf did not require the plaintiff to accept a month to month lease after April 2, 1979. The month to month tenancy was activated by the plaintiff's holding over due to the failure of the parties to agree on a new rental, and Gulf was offering the plaintiff a lease for a period of twenty-seven months, which is longer than one year

and would appear to satisfy the requirements of Pennsylvania law. We therefore find at this stage of the litigation that, in connection with the notice issue, the plaintiff has failed to carry his burden of establishing that there exist "sufficiently serious questions going to the merits to make such questions a fair ground for litigation."

The plaintiff also relies on the case of *Blankenship v. Atlantic-Richfield Co.,* 478 F.Supp. 1016 (D.Or.1979), where the court found that the franchisee had not received the ninety days' notice provided in section 2804(a), the notice having been something less than ninety days. As we have heretofore pointed out, the plaintiff has received the ninety days' notice required by section 2804(a).

■ The plaintiff also contends that the rent increases demanded by Gulf were not made "in good faith and in the normal course of business" pursuant to section 2802(b)(3)(A) of the PMPA. Section 2802(b)(3)(A) provides:

(3) For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

The director of retail sales for Gulf testified that the proposed rental figures in the plaintiff's new lease were calculated according to Gulf's rental policy, which established the annual rental by taking the higher of either the occupancy cost to Gulf or 10% of the appraised value of the property. He explained that the occupancy cost was $18,516, and that 10% of the appraised value of the property came to $16,000. He stated

that after considering the ability of the property to generate income, Gulf concluded that $18,516 was an unrealistic figure, and it reduced its final rent offer to $7,800 per year, which is $650 per month. He further testified that it was Gulf's intention to renew the plaintiff's lease at this figure since the plaintiff was in good standing with Gulf. On the other hand, the plaintiff testified that he could not afford to pay the rent of $650 per month because of the increased cost of doing business. On the basis of the evidence presented at the preliminary injunction hearing, we find at this stage of the litigation that, in connection with the "good faith" issue of section 2802(b)(3)(A)(i) and (ii), the plaintiff has failed to carry his burden of establishing that there exist "sufficiently serious questions going to the merits to make such questions a fair ground for litigation."

Furthermore, section 2805(b)(4) of the PMPA provides that a court need not exercise its equity powers to compel the continuation or renewal of a franchise relationship if the suit by the plaintiff commenced more than ninety days after the date on which notice of nonrenewal was served. Since it appears that the plaintiff received notice of nonrenewal on May 14, 1979, and that his action was not instituted until August 24, 1979, it would appear that more than ninety days elapsed between the receipt of notice of nonrenewal and the filing of this action. In accordance with section 2805(b)(4)(A), this would appear to be another reason for the Court to decline to exercise its equity powers and issue a preliminary injunction.

This Memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). An appropriate order will accordingly be entered.