Joseph W. DAVY and Larry
Davy, Plaintiffs,

v.

MURPHY OIL CORPORATION, a
Delaware Corporation, Defendant.

Civ. A. No. G79–709.

United States District Court,
W. D. Michigan, S. D.

Jan. 3, 1980.

Korn, Burns, Hogg & Fershee, Cadillac, Mich. by Robert A. Burns, Cadillac, Mich., for plaintiffs; Baxter & Hammond by William S. Farr and Robert N. Alt, Jr., Grand Rapids, Mich., of counsel.

Warner, Norcross & Judd by William K. Holmes, Grand Rapids, Mich., for defendant.

## OPINION and ORDER

BENJAMIN F. GIBSON, District Judge.

Plaintiffs seek injunctive relief pursuant to the Petroleum Marketing Practices Act, (hereinafter called "the Act") as set forth in 15 U.S.C. § 2801, et seq. Plaintiffs contend that the provisions under the Act were not complied with when defendant purported to give notice of nonrenewal of the existing lease agreement. It is contended by plaintiffs that the provisions of the Act provide that notice be given of nonrenewal in the manner as set forth in § 2804(c) of the Act. Specifically, plaintiffs assert that the Act requires that the reasons for the nonrenewal be set forth in the Notice and such reasons were not so specified. In addition, the plaintiffs further charge that the proposed terms of a new lease are unreasonable and designed to prevent the renewal of the lease or franchise relationship.

Plaintiffs operate a retail outlet for the sale of petroleum products of the defendant in Cadillac, Michigan, pursuant to a lease agreement bearing the date of December 28, 1978, and which expires on December 31, 1979. A "convenience store" is also part of the same agreement. This agreement provides that plaintiffs may occupy the premises of the defendant and may sell motor fuels under the trademark of the defendant. It appears that such relationship has existed between the parties from 1972 to the present date. It further appears that during this period of time the business generated at this location has substantially increased. The gasoline sales increased from about 360,000 gallons per year to 1.6 million gallons per year. Under the current lease agreement, plaintiffs pay rental of 1.25 cents per gallon together with rent of $700 per month for the convenience store. It further appears that the rent paid was in excess of $25,000 for the year 1979.

On September 14, 1979, the defendant sent the following notice to plaintiffs:

This letter will constitute formal notice that Murphy Oil Corporation wishes to cancel the Lease-Lessee Dealer Agreement with Convenience Store dated December 28, 1978, under which you currently operate the subject station, effective December 31, 1979.

Please do not be alarmed or concerned by this letter. Our business relationship with you over the past years has been quite satisfactory, and we definitely wish to continue in that relationship. Your sales representative, C. G. Clair, will be in contact with you in the very near future to discuss terms of a new lease.

Plaintiffs contend that this notice is deficient in that it did not give the "reasons" for the nonrenewal of the lease agreement as provided for by § 2804 of the Act which provides that the Notice:

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain—

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;

(B) a date on which such termination or nonrenewal takes effect; and

(C) a summary statement prepared under subsection (d)

Prior to making a determination as to whether or not the Notice given by defendant complies with the above provisions, it would be of some assistance to discuss the purpose of the Act. The Act was enacted in 1978 in order to establish "minimum federal standards governing the . . . nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or the supplier of such fuel." (1978) U.S.Code Cong. & Admin.News, p. 873. In other words, the Act is designed to protect franchise distributors and retailers of gasoline against arbitrary or discriminatory termination or nonrenewal of franchises. See *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302 (D.C.Minn.1979). Therefore, this Court concludes that the primary purpose of the Act is for the protection and the benefit of franchisees against arbitrary acts of franchisors recognizing the disparity of bargaining power of the parties.

With this broad purpose in mind, the Act permits termination or nonrenewal of a franchise or lease provided:

(A) the notification requirements of § 2804 of this title are met; and

(B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3). [15 U.S.C. § 2802(b)(1)].

Therefore, a franchise may not be terminated or nonrenewed unless the franchisee is given notice pursuant to the requirement of § 2804(c) of the Act.

Defendant contends that the "reasons" stated in the Notice dated September 14, 1979, for the nonrenewal of the lease was "to allow the parties to negotiate additional terms and conditions." Apparently, defendant gleans this from the last sentence of the Notice which states: "Your sales representative, C. G. Clair, will be in contact with you in the very near future to discuss terms of a new lease."

There is no dispute as to the fact that the September 14, 1979, Notice was that which the defendant intended to give as required by the Act. Since the defendant may only nonrenew the lease if the nonrenewal is based upon a ground prescribed in § 2802(b)(2) or (3), it is essential that the reasons for the nonrenewal be specific and unambiguous so that the plaintiffs are able to determine if the reasons are consistent with the Act. As shall be discussed hereinafter, the defendant in support of the nonrenewal of the lease attempts to bring the action taken by it within the provisions of § 2802(b)(3) which provide, in part, as follows:

For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

Can it be said that the Notice adequately apprises plaintiffs of the reasons for the nonrenewal so they can determine if the provisions of the Act have been complied with?

In the recent case of *Kesselman v. Gulf Oil Corp.*, 479 F.Supp. 800 (E.D.Pa.1979), Gulf gave notice to the lessee of its intent not to renew the lease as follows:

Gulf Oil Company—U. S. hereby gives you formal notice as required by the Petroleum Marketing Practices Act that Gulf will not renew its lease and other related agreements with you effective at the end of the above-mentioned ninety

day period. Upon our receipt of the signed U. S. Postal Service receipt, Gulf will immediately confirm to you in writing the effective date of the lease.

Gulf finds it must take the above action pursuant to Section 102(B)(3)(a) of the PMPA because our failure to agree on an acceptable rental increase was not the result of Gulf's insistence on such increase for the purpose of preventing a renewal but was, in fact, the result of your failure to agree to a term which was offered in good faith and in the normal course of business and which involved efforts on Gulf's part to compromise and negotiate the rental increase.

█ The lessee is advised that the nonrenewal results from the inability of the parties to agree on an acceptable rental increase and that such rental increase was offered in good faith. In this case the plaintiffs are only advised that they will be contacted to discuss "terms of a new lease." At this point, there is nothing to indicate in the Notice as to why the lease is not being renewed. This does not adequately advise the plaintiffs of the specific reasons for the nonrenewal nor does it permit plaintiff to determine whether or not the provisions of the Act have been complied with. In *Blankenship v. Atlantic-Richfield Co.*, 478 F.Supp. 1016 (D.Or.1979) the court made the following statement where it appeared that the franchisor had not given the requisite 90-day notice:

> Thus, defendant has failed to comply with the notice requirement and plaintiff must prevail under the Act. The notice requirement is a mandatory prerequisite to defendant's nonrenewal. I have no authority to grant relief from that requirement.

Defendant argues that "minor technical deficiencies ought not to be the basis for an injunction against termination if, at the time of termination, proper grounds exist." It suggests that *de facto* compliance with requirements is sufficient. Defendant would have this Court overlook the unequivocal mandate of Congress with respect to notice requirements and permit deviations therefrom. Apparently, the defendant would have the Court invoke its equitable powers to do so. This same argument was made in *Blankenship* and was rejected as follows:

> Defendant cannot rely on plaintiffs remedy provision to argue that the court can waive a statutory prerequisite to the defense. If Congress had intended the court to have the power to cure or waive a notice defect, it would have so provided under the notice provisions of § 2804, and not the remedy provision of § 2805.

In the *Blankenship* case it appeared that there were sufficient reasons for the nonrenewal and these reasons were sufficiently set forth in the notice. However, the defendant had not given the prescribed 90-day notice.

In spite of this "technicality" and in spite of the fact that the facts presented sufficiently showed a reason for nonrenewal within the provisions prescribed by the Act, the Court felt constrained to hold that the effort to not renew the lease must fail. The Court stated:

> However, had I the authority to cure defendants notice defect, I would do so. This is because strict application of the notice provision creates a hardship on the franchisor, particularly under the facts of this case.

Defendant further contends that the Notice of September 14 and the letter of October 2 should be read together and when so combined, the notice requirements are complied with. However, the Act speaks only in terms of *one* notice. A fair reading of the Notice provisions cannot support the defendant's position. Neither can this Court consider what knowledge the plaintiffs may have had regarding the reasons for the nonrenewal apart from the formal notice. The Court is not unmindful that defendant is a large sophisticated corporation and should be charged with being knowledgeable about its legal responsibilities with reference to its leases. Neither law nor equity requires that defendant should not be held strictly accountable under the Act, considering its purposes.

The contention of defendant that the Notice contains the "reasons" required by the Act stretches the imagination not only because defendant is charged with knowledge of the provisions of the Act, but because the lease agreement between the parties specifically provide that any termination or nonrenewal must satisfy the grounds set forth in the Act. The lease agreement in pertinent part provides:

Lessee may terminate this agreement during the term hereof or fail to renew this agreement at the expiration of its term or any extension thereof by giving Murphy at least thirty (30) days' prior written notice given in person or by certified mail of such intention to terminate or not to renew the agreement. Murphy may terminate this agreement during the term hereof or fail to renew this agreement at the expiration of its term or any extension thereof pursuant to any of the grounds listed in the Federal "Petroleum Marketing Practices Act", P.L. 95–297, 92 Stat. 322 et seq., 15 U.S.C. 2801 et seq. (The Act), if such grounds exist. The attachment to this agreement entitled "Grounds for Termination and/or Nonrenewal Under the Petroleum Marketing Practices Act", incorporated herein by this reference as part of this agreement lists the grounds justifying termination and nonrenewal.

Should Murphy terminate or fail to renew this agreement pursuant to the manner outlined above, it (Murphy) expressly reserves the right to repossess such premises after said termination, and operate such premises through its employees or agents.

Therefore, defendant should be aware of its responsibility to give specific reasons to plaintiff for the nonrenewal.

■ In addition to arguing that technical deficiencies should be overlooked by the Court, defendant argues that the reasons for the nonrenewal are indeed set forth in the Notice, namely, "to discuss terms of a new lease." Assuming arguendo that such words do constitute reasons for the nonrenewal of the lease (recognizing that the Court has found otherwise), the defendant still cannot prevail. The nonrenewal of the lease to "discuss terms of a new lease" is not a "ground" set forth in the Act. The Court understands that the reason for the nonrenewal, based upon the testimony of defendant's witness, was failure of the parties to agree with respect to rental provisions of the lease. From the evidence, the Court finds that at the time the Notice was given, defendant did not know whether a new lease agreement would be negotiated. Defendant is not free to anticipate that the parties will not be able to agree on a new lease and, therefore, anticipate that the nonrenewal is based upon a ground set forth in the Act.

Plaintiffs further contend that the rental increase is unjustified. In support of this charge plaintiffs point to an increase of 260 percent. The facts show that the rental rate proposed was 3.25 cents per gallon as compared with 1.25 cents per gallon. The effect of this increase will result in increased rental of at least $30,000 per year. The Court will not concern itself with the merits of this contention since, as indicated above, the notice requirements were not complied with.

As previously noted, plaintiff seeks injunctive relief according to § 2805(b)(2) of the Act which provides:

[T]he Court shall grant a preliminary injunction if—

(A) The franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

The above standards should be compared with the standards for preliminary injunctions in other matters as required by *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). In that case the Court set forth the following standards for preliminary injunctive relief:

1. Whether the plaintiffs have shown a strong or substantial likelihood of probability of success on the merits;
2. Whether the plaintiffs have shown irreparable injury;
3. Whether the issuance of a preliminary injunction would cause harm to others, and
4. Whether the public interest would be served by issuing a preliminary injunction.

This Court concludes that Congress has evidenced a conscious desire to relax the standards for granting preliminary injunctive relief under the Act giving recognition to the general purpose of protecting the franchisee in dealings with the franchisor. This was recognized in *Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich.1978). In that case the court said:

Clearly, although Congress wanted and designed an act to protect the franchisee from overbearing franchisors, it did not desire to impose upon the courts needless litigation. The use of the terms "serious question" and "fair ground" indicates that it intended a significant showing of something that would constitute some reasonable chance of success even though it could not be shown that there was a likelihood of probability of success as is required in the ordinary preliminary injunction matter.

The test applied in the ordinary case is "Has the petitioner made a strong showing that he is likely to prevail on the merits . . .?" *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). Other phrases used are "strong likelihood of success", or "substantial indication of probable success". In the ordinary preliminary injunction case, the court's attention is directed at a "strong showing" and at "probability".

This statute is intended to require less than that but it is clear that it does require something. Instead of a "strong showing" or "probability" of success, the terms "serious question" and "fair ground for litigation" suggest merely a reasonable chance of success, something far less than the probability or likelihood required by *Virginia Petroleum Jobbers, supra,* and *Corning Glass Works v. Lady Cornella Inc.*, 305 F.Supp. 1229 (E.D.Mich.1969).

The court, therefore, must look at the facts produced to determine whether they indicate "serious questions" that go to the merits and whether such questions make a "fair ground" for litigation or some reasonable chance of success. If the questions are not serious or they do not go to the merits or they do not make fair grounds for litigation or a reasonable chance of success, the injunction should not issue.

■ Since this Court has determined, based upon the evidence before it at this time, and for purposes of the preliminary injunction request, that the Notice requirements have not been satisfied, it logically follows that the standards for granting preliminary injunctions regarding the existence of "sufficiently serious questions going to the merits to make such questions a fair ground for litigation" have been satisfied.

The Court further determines that, on balance, the issuance of a preliminary injunction will impose less of a hardship on the franchisor than it would impose upon the franchisee if the preliminary injunctive relief were not granted. There has been ample testimony on the record which tends to show that the nonrenewal of the lease will place a greater hardship on the plaintiffs than on the defendant. The Court takes note of the fact that the defendant within the region in which the plaintiffs operate has about 140 retail outlets leased out.

The Court has concluded that there are serious questions going to the merits as to whether or not the notice requirements are consistent with the Act and the Court fur-

ther concludes that such questions are a fair ground for litigation. The Court further concludes in balancing the relative hardships between the plaintiffs and defendant, that the plaintiff will suffer greater hardship if the preliminary injunctive relief is not granted than the defendant would suffer if such injunction were granted.

The second basis upon which the plaintiffs seek a preliminary injunction is that the rental increase proposed by defendant is unreasonable and arbitrary and designed for "the purpose of preventing the renewal of the franchise relationship." The Court, based upon the evidence before it, finds that although discussions were had prior to the Notice, plaintiffs did not specifically know the reasons for the nonrenewal until subsequent to the receipt of the Notice. Since this Court has determined that the Notice was not in accordance with the provisions of the Act, such determination is sufficient to prevent the nonrenewal of the lease. Further, this Court has determined that the Notice does not contain sufficient "reasons" within the contemplation of the Act. But, even if the wording of the Notice can be reasonably construed to contain "reasons", the Court concludes that such "reasons" do not fall within the provisions of the Act. Therefore, the Court need not go into the question of the lease proposal submitted by the defendant since such was not the "reasons" given in the Notice agreement.

The Notice required by the Act is a prerequisite for termination or nonrenewal. If these Notice requirements are not satisfied, then the effort of the defendant not to renew the lease must fail. The Court has concluded that there has been noncompliance for the reasons stated and, therefore, determines that the lease agreement has not been cancelled. Where the lease has not been terminated or nonrenewed the lease agreement provides:

> that the term of this agreement shall be for a one year period, from January 1, 1979, to December 31, 1979, and from year-to-year thereafter unless terminated or nonrenewed as herein provided in provision no. 4 of this agreement.

Therefore, since the defendant has failed in its efforts not to renew the lease, this Court concludes that the above provision is applicable and the lease continues for the ensuing year (1980).

This Court grants the plaintiffs a preliminary injunction enjoining the defendant from nonrenewing the Lease-Lessee Dealer Agreement dated December 28, 1978 until further order of the Court. An appropriate preliminary injunction will issue upon presentation by plaintiffs to the Court. This memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

The parties shall be given 15 days from the date of this Order to advise the Court as to whether they wish to present any additional evidence concerning the matter of a permanent injunction.

IT IS SO ORDERED.