William S. SUTTON, Plaintiff,

v.

ATLANTIC RICHFIELD COMPANY, A Pennsylvania Corporation, Defendant.

ATLANTIC RICHFIELD COMPANY, A Pennsylvania Corporation, Counterclaimant,

v.

William S. SUTTON and Marilyn L. Sutton, Counterdefendants.

No. CV 81–6433 TJH (Px).

United States District Court, C. D. California.

May 27, 1982.

Mitchell S. Shapiro, Shapiro, Laufer, Posell & Close, Los Angeles, Cal., for plaintiff.

Ronald C. Peterson, Tuttle & Taylor, Los Angeles, Cal., for defendant.

OPINION

HATTER, District Judge.

## THE PETROLEUM MARKETING PRACTICES ACT

The Petroleum Marketing Practices Act of 1978 ("PMPA"), 15 U.S.C. §§ 2801–2805, remedied what Congress perceived as a disparity in bargaining power between oil companies ("franchisors") and their retail service station franchisees ("franchisees"). PMPA prohibits franchisors from failing to renew franchises, except on specific grounds. 15 U.S.C. § 2802(a)(2) & (b)(1)(B). Franchisors must give franchisees 90 days written notice of intent not to renew and the reasons for not renewing. 15 U.S.C. §§ 2802(b)(1)(A) & 2804(a)(1) & (2), (c)(1) & (3)(A).

## FACTS

Plaintiff William S. Sutton ("Sutton") has operated a gasoline service station since 1970 under various leases and supply contracts with defendant Atlantic Richfield Company ("Arco"). Arco holds the station premises under a lease executed in 1968 from their fee owner, American-Hawaiian Properties. The lease ("base lease"), which runs until 1995, provides for payment of a minimum rent plus additional rent based on the quantity and price of gasoline sold on the premises.

In 1975, Sutton purchased the premises from American-Hawaiian, thereby becoming Arco's landlord as well as Arco's lessee. From 1975 through 1978, the annual rent

paid to Sutton by Arco increased from $25,390 to $85,266.

In a letter dated January 13, 1978, Arco informed Sutton that failure to renegotiate the base lease would result in nonrenewal of Sutton's franchise, then scheduled to expire on February 1, 1978. To allow renegotiation, the franchise was extended until December 31, 1978.

At a meeting on June 13, 1978, an Arco representative told Sutton that the rent required by the base lease made Sutton's operation unprofitable to Arco.

In a letter dated June 30, 1978, Arco informed Sutton that because of failure to renegotiate the base lease, Arco would allow Sutton's franchise to expire on December 31, 1978.

On August 2, 1978, Arco renewed Sutton's franchise for three years, until December 31, 1981, without stating a reason. Sutton indicated in deposition that he understood the renewal to be required by PMPA.

From 1978 to 1981, the rent due on the base lease rose from $85,266 to $179,441.

On September 29, 1981, 91 days before Sutton's franchise was to expire, Arco notified Sutton by hand delivered letter of its intent not to renew the franchise, stating as its reason:

> [Arco] has determined in good faith and in the normal course of business that renewal of [the franchise] is likely to be uneconomical to [Arco] despite any reasonable changes or reasonable additions to the provisions of the agreements or the present relationship which may be acceptable to you.

Sutton filed a complaint on December 22, 1981 praying for damages caused by Arco's failure to renew and for an injunction restraining Arco from not renewing the franchise. Arco counterclaimed on January 13, 1982 for a declaration of its rights, possession of the service station, and reformation of the base lease.

Arco moved for an order specifying as a fact without material controversy that its notice of nonrenewal to Sutton complied with PMPA's notice provisions, 15 U.S.C. § 2804. Sutton moved for summary judgment on his claim and on Arco's counterclaim.

## ANALYSIS

The facts regarding Arco's notice of nonrenewal are not disputed.

Sutton claims summary judgment is appropriate because Arco did not comply with the notice provisions of PMPA. Arco seeks an order specifying that it did comply. Thus, the motions are opposite sides of one coin and may be decided by applying law to uncontroverted fact.

Compliance with PMPA's notice provisions is a matter of first impression in the Central District of California and in the Ninth Circuit.

PMPA requires that a franchisor's notice of nonrenewal state the "reasons" for nonrenewal. 15 U.S.C. § 2804(c)(3)(A). One ground for nonrenewal allowed by the statute is that a franchisor, "in good faith and in the normal course of business [determine] that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee." 15 U.S.C. § 2802(b)(3)(D)(i)(IV). Arco recited this language as its reason for not renewing Sutton's franchise.

Case law and the structure of PMPA indicate that section 2804 requires notice of nonrenewal to provide reasons specific enough for franchisees to determine whether nonrenewal rests on lawful grounds.

In *Davy v. Murphy Oil Corp.*, 488 F.Supp. 1013 (W.D.Mich.1980), on all fours with the present case, the court held: "It is essential that the reasons for nonrenewal be specific and unambiguous, so that the plaintiffs are able to determine if the reasons are consistent with [PMPA]." *Id.* at 1015.

Similarly, in *Clark v. Mobil Oil Corp.*, 496 F.Supp. 132 (E.D.Mich.1980), a notice was held deficient which stated, "[t]he reason ... for our nonrenewal [is] that Mobil has determined that it does not wish to contin-

ue its franchise relationship with you." The court stated that "the so-called 'reason' provides no information . . . the franchisee would not know from the mere fact" of nonrenewal. *Id.* at 134.

The structure of PMPA suggests that Congress intended franchisees to be provided information sufficient to verify for themselves whether nonrenewals rest on grounds allowed by the Act. Section 2804(c)(3)(C) requires that notice be accompanied by a summary of PMPA, which would be of little use unless the notice provided information sufficient to verify compliance with PMPA.

Therefore, on its face, Arco's notice of nonrenewal delivered September 29, 1981 was deficient. The mere statement that Arco found renewal of Sutton's franchise "uneconomical" gave Sutton no information he could use to verify Arco's compliance with PMPA. Sutton could not have determined what changes in his franchise relationship agreements Arco assumed he would not accept nor what meaning Arco imputed to "uneconomical."

However, when Arco's nonrenewal notice is considered in light of all facts known to Sutton, it appears that Arco provided sufficient information for Sutton to verify Arco's compliance with PMPA.

In determining the sufficiency of notices of nonrenewal, courts have considered, not only the reason stated in the formal notice, but all the facts about nonrenewal known to the franchisee.

In *Orr v. Texaco, Inc.,* 1980–81 Trade Cas. (CCH) ¶ 63,672 (N.D.Ga.1980), the court considered a notice of nonrenewal specifying as its reason only that, "we have received numerous bona fide complaints concerning your operation . . . ." *Id.* at 77,611 (quoting 15 U.S.C. § 2802(b)(3)(B)). Notice was held to be sufficient because the franchisee had been promptly apprised of each complaint as it had been received. *Id.* at 77,613.

Likewise, in *Veracka v. Shell Oil Co.,* No. 80–533–S (D.Mass. Nov. 26, 1980), *aff'd,* 655 F.2d 445 (1st Cir. 1981), the court upheld notice reciting the following statutory ground: "loss of Shell's right to grant possession of the . . . underlying lease . . . ." Slip op. at 2. *Cp.* 15 U.S.C. § 2802(c)(4). Again, the franchisee's knowledge was detailed because he had been informed when he contracted with Shell of possible expiration of the base lease. 665 F.2d at 447.

The present case is similar to *Orr* and *Veracka.* In 1978, when Arco first attempted not to renew his franchise, Sutton knew Arco considered his station uneconomical, and he knew why: By Arco's determination, each gallon of gas sold to Sutton cost Arco more in rent than Arco gained in profit. Thus, in 1978, Sutton could have verified whether Arco made its determination "in good faith and in the normal course of business." 15 U.S.C. § 2802(b)(3)(D). Had nonrenewal occurred in 1978, Arco's notice of nonrenewal would have complied with PMPA.

The issue is whether Sutton was still able to verify Arco's compliance in 1981, when Arco delivered the notice of nonrenewal here in dispute. The record is silent between 1978 and 1981. Arco's 1978 renewal might have led Sutton to believe that Arco had changed its determination of his station's unprofitability. However, evidence indicates that Sutton knew the 1978 renewal to be required by PMPA, and thus not indicative of Arco's determination.

Thus, there is a genuine issue of material fact whether Sutton understood Arco's statement in 1981, that his franchise was "uneconomical," to refer to Arco's determination in 1978 that the rent due on the base lease rendered his franchise unprofitable to Arco.

Accordingly, Sutton's motion for Summary Judgment is denied. Likewise, Arco's motion for an Order Specifying a Fact without Substantial Controversy is denied.