Paul **HERMAN**, d/b/a Herm's Amoco

v.

**CHARTER MARKETING COMPANY, et al.**

**Civ. No. H–87–459 (PCD).**

United States District Court, D. Connecticut.

Aug. 24, 1988.

Carl T. Holt, Farrell & Barr, Stamford, Conn., for plaintiff.

Steven M. Greenspan, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

### I. *Facts and Procedural History*

On or about February 21, 1984, plaintiff and defendant[1] entered into a franchise agreement which authorized plaintiff to operate a service station. The lease between plaintiff and defendant provided an effective term from March 1, 1984 to February 28, 1987. Lease Agreement at 1.

Defendant had leased the real property on which the service station was located from Wethersfield Developers, Inc. ("underlying lease"). That lease had an initial expiration date of June 30, 1987. Plaintiff was not informed, in writing, of that date, but was told by defendant's representative, George Hubbard, of defendant's lease of the property and that that lease expired

toward the end of plaintiff's lease. *See* Affidavit of Plaintiff (filed November 30, 1987) at ¶ 6; Deposition of Paul Herman at 48–49. Plaintiff also claims that defendant told him it had a five-year renewable option on the property so that the lease would effectively last for at least eight years. *Id.* The parties disagree as to when plaintiff was made aware of the fact that defendant did not, in fact, have a renewable option.

On September 18, 1986, defendant notified plaintiff that because Wethersfield Developers, Inc. had not agreed to extend its underlying lease, it could not renew plaintiff's lease beyond March 1, 1987.

Plaintiff alleges:

1. Defendant violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2802(c)(4), by failing to give him notification, in writing, prior to the commencement of the franchise, of the duration of the underlying lease and that said lease would not be renewed during the term or at the end of the franchise.

2. Defendant fraudulently misrepresented or omitted critical information concerning the underlying lease.

3. Defendant violated the Connecticut Fair Conduct in Franchising Act ("CFCFA"), Conn.Gen.Stat. § 42–133j, by not dealing in good faith with him insofar as it misrepresented or omitted information concerning the underlying lease.

4. Defendant violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–100(a), *et seq.*, by failing to inform him about the existence of and duration of the underlying lease.

5. Defendant violated CFCFA, Conn. Gen.Stat. § 42–133*l* (b) by failing to give him one year's notice of non-renewal of his lease.

Plaintiff now moves for summary judgment on Counts One and Five. Defendant has filed a cross-motion on those same counts.

### II. *Discussion*

Plaintiff argues that § 2802(c)(4) of the PMPA requires that a franchisor provide

---

**1.** Defendant Charter Marketing Company is the successor in interest to defendant Mercury Oil Company. Complaint at ¶ 6. They are herein treated as one party.

the franchisee with written notification prior to the commencement of the franchise as to the duration of the underlying lease. Absent such written notification, plaintiff argues that defendant may not rely on § 2802(b)(2)(C) to justify its termination of the franchise. Accordingly, plaintiff requests the entry of summary judgment as to Count One.

Defendant argues that, while plaintiff was not provided with written notice concerning the expiration date of the underlying lease, it is undisputed that he was orally advised prior to the commencement of his lease with defendant that the underlying lease would expire at or near the time of the scheduled expiration date of his lease. It, therefore, claims that it complied with the intent of § 2802(c)(4) and is entitled to the benefit of § 2802(b)(2)(C). It further argues that plaintiff cannot claim that it relied upon defendant's erroneous representation that it had an option to renew the underlying lease for five years because, even if such an option existed, it was under no obligation to exercise such.

As to Count Five, plaintiff argues that defendant's September 18, 1986 notice that plaintiff's franchise would be terminated effective March 1, 1987, violated Conn.Gen. Stat. § 42–133*l* (b) because it did not provide plaintiff with one year notice of termination of his franchise. *See Bellmore v. Mobil Oil Corp.*, 783 F.2d 300 (2d Cir.1986). Defendant argues initially, however, that § 42–133*l* (b) is preempted by the PMPA and that plaintiff cannot, therefore, recover any good will damages it may have incurred. Alternatively, it argues that § 42–133*l* (b) was not violated because plaintiff actually received more than one year notice that his lease would not be renewed if the underlying lease expired. Finally, defendant argues that plaintiff has no right to claim the protections of § 42–133*l* (b) because the relationship between the parties did not qualify as a franchise under the CFCFA inasmuch as the agreement did not impose on plaintiff a "marketing plan or system prescribed in substantial part" by defendant. Conn.Gen. Stat. § 42–133k(b).

## A. *Summary Judgment*

Fed.R.Civ.P. 56(c) provides, in part, that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The burden falls on the moving party to establish that no relevant facts are in dispute. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); *accord Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] ... (1970). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] ... (1962) (*per curiam*); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir.1981); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 [106 S.Ct. 2505, 91 L.Ed.2d 202] ... (1986).

Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, [480 U.S. 932]... 107 S.Ct. 1570 [94 L.Ed.2d 762] ... (1987). It must, however, be used selectively to avoid trial by affidavit. *Judge v. Buffalo*, 524 F.2d 1321 (2d Cir.1975). Hence, the fundamental maxim remains that on a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman*, 524 F.2d at 1319–20. As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] ... (1986).

*Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57–58 (2d Cir.1987).

### B. *Count One*

The PMPA "prohibits a franchisor from terminating or failing to renew a franchise without satisfying certain notice provisions and without stating a reason for termination sanctioned by the act." *Checkrite Petroleum, Inc. v. Amoco Oil Co.,* 678 F.2d 5, 7 (2d Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 74, 74 L.Ed.2d 73 (1982). Section 2802(c)(4) provides that the loss of a franchisor's right to grant possession of the premises justifies non-renewal of the franchise if the franchisee was notified in writing, prior to the commencement of the franchise, of the existence of the underlying lease and the fact that it might not be renewed.

As noted, *supra,* there is no dispute but that plaintiff was told orally—not in writing—prior to signing his lease, of the underlying lease and the fact that it would expire toward the end of his three year lease. Affidavit of Paul Herman at 6, 7; Deposition of Paul Herman at 48–49. Plaintiff claims, however, that he was told that defendant had an option which would effectively extend the underlying lease and, therefore, his lease, for an additional five years. Defendant does not dispute this claim, but does dispute as to when plaintiff was informed that no such option existed. Affidavit of Paul Herman at 6. The issue presented is whether the PMPA precludes reliance on § 2802(c)(4) if the notice provided was not written.

### 1. *Requirement of Written Notice*

The early cases which studied the issue of whether strict compliance with the notice provisions of the PMPA was required held that such was implicitly required inasmuch as Congress had not provided the courts with any power to cure a defective notice. *See Blankenship v. Atlantic–Richfield Co.,* 478 F.Supp. 1016, 1018 (D.Ore.1979); *see also Escobar v. Mobil Oil,* 678 F.2d 398, 400 n. 2 (2d Cir.1982); *Thompson v. Kerr–McGee Refining Corp.,* 660 F.2d 1380, 1390 (10th Cir.1981); *Mobil Oil Corp. v. Clark,* 652 F.2d 2, 3 (8th

Cir.1981); *Daniels v. Dilmar Oil Co.,* 502 F.Supp. 178, 181 (D.S.C.1980); *Davy v. Murphy Oil Co.,* 488 F.Supp. 1013, 1016 (W.D.Mich.1980). The later cases, however, have opted for a less strict reading of the statute holding that *Blankenship* and its progeny exalt form over substance. *See Brown of American Petrofina Marketing, Inc.,* 555 F.Supp. 1327, 1335 (M.D. Fla.1983), *aff'd,* 733 F.2d 906 (11th Cir. 1984). In *Hutchens v. Eli Roberts Oil Co.,* 838 F.2d 1138, 1143 (11th Cir.1988), the court held that, although the notice provision under § 2802(c)(4) had not been met, the lease could still be canceled inasmuch as the franchisee had indicated "that the term of the base lease made no difference to him and that he had made no effort to discover it." *See also Dandy Oil, Inc. v. Knight Enterprises, Inc.,* 654 F.Supp. 1265, 1270 (E.D.Mich.), *appeal dismissed,* 830 F.2d 193 (6th Cir.1987); *Martin v. Texaco, Inc.,* 602 F.Supp. 60, 62–63 (N.D.Fla. 1985); *Sutton v. Atlantic Richfield Co.,* 539 F.Supp. 658, 660 (C.D.Cal.1982); *Brungardt v. Amoco Oil Co.,* 530 F.Supp. 744, 747–48 (D.Kan.1982).

A requirement of strict adherence to the notice provisions eliminates after-the-fact factual disputes, but runs the risk of exalting form over substance. A rule allowing greater flexibility prevents a franchisor from being held liable for failure to memorialize what was actually communicated to the franchisee, but risks the uncertainty of resolving a factual dispute as to the notice actually given. The better approach is to require a writing where such would be consistent with the purpose of the PMPA. For instance, in *Service Road Gulf, Inc. v. Gulf Oil Corp.,* 624 F.Supp. 496, 498–99 (D.Conn.1986), it was held that to require the franchisor to send a second notice of non-renewal to refer correctly to a party, where the first notice correctly provided the required information, would exalt "form over substance."

In this case, plaintiff admits that, prior to his executing the franchise agreement, he was aware of the underlying lease and of its actual expiration date. He also claims, based on defendant's representa-

tion, that it had an option for an additional lease term and that the parties were looking at a lease of eight years. Deposition of Paul Herman at 48–49. Defendant does not deny that it erroneously informed plaintiff that it had a five year option to extend the underlying lease. Defendant's Memorandum at 11. However, it argues that such a misrepresentation is immaterial because it would have been under no obligation to exercise such an option even if one existed. According to defendant, plaintiff did not accrue an enforceable right to a lease beyond the basic term. At most, plaintiff would have had a hope that such an option would be exercised and in turn his lease extended. He could not, however, rely on any representation or expectation that the franchise agreement would last for eight years. In short, while plaintiff was concededly misinformed, he suffered no prejudice as a result of that misrepresentation.

What defendant fails to realize, however, is that this is not just a simple case where plaintiff was told of the existence of the underlying lease, its duration, and of the existence of an option. If that were the case, plaintiff would have been apprised of all the necessary facts and a written notice could be deemed superfluous. Plaintiff would not, under such circumstances, have been entitled to assume that defendant would exercise its option. *Russo v. Texaco, Inc.*, 808 F.2d 221, 227 (2d Cir.1986); *Lugar v. Texaco*, 755 F.2d 53, 56 (3d Cir. 1985); *Veracka v. Shell Oil Co.*, 655 F.2d 445, 448 (1st Cir.1981).

Plaintiff claims that defendant also implied that he would, in fact, have an eight year lease. He claims that defendant did not merely represent that it had an option, but that it also would exercise that option. Defendant has not rebutted this claim by any citation to the record. *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. The notice plaintiff received was, therefore, defective because it was inconsistent with the facts as claimed by plaintiff. Defendant only had a three year lease to the underlying property. The fact that plaintiff was apprised, at the latest soon after the lease began, that no option existed is of little significance. Section 2802(c)(4) requires that the franchisee be notified of circumstances which might affect his lease before he signs it. That requirement permits him to calculate his expectations from the term of lease made known to him and precludes him from claiming expectations other than reasonably based on those facts.

Furthermore, even if defendant had rebutted plaintiff's claimed understanding of his lease arrangement, summary judgment would still be appropriate. As in any situation requiring that an agreement or statement be placed in writing, § 2802(c)(4)'s writing requirement serves two functions.[2] First, a writing memorializes the exact information conveyed to the franchisee and, by implication, creates a presumption that what is not written was not said. Second, it creates a record which can be reviewed in hindsight thereby eliminating the necessity of proof of the facts communicated including the testing of the recollection and credibility of the respective witnesses. The absence of a writing in this case would, if defendant were excused from the written notice requirement, strip the plaintiff of the benefit of both these functions. Instead of being able to show the undisputed communication he relied on, plaintiff would have to prove why he was justified in relying on certain ambiguous oral communications, the precise nature of which has long since been forgotten. In short, he would be placed in the uncertain world that Congress sought to avoid.

The PMPA obliges the franchisor to prevent these types of problems. *See Roleco Service Stations*, 839 F.2d at 98, quoting S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 876 ("The fundamental premise of the Act was that there was a disparity of bargaining power that resulted in the 'vulnerability of the franchisee to the demands and actions of the franchisor.' ").

---

2. Contracts regulated under the PMPA are interpreted according to state contract law. *Roleco Service Stations v. Getty Refining & Marketing*

*Co.*, 839 F.2d 88, 91–92 (2d Cir.1988); *Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 712 (7th Cir. 1985).

In this case, defendant failed to provide the requisite written notice—a deficiency which not only conflicts with the strict requirements of § 2802(c)(4), but also with the intent of the Act. It must bear the burden for that mistake. Plaintiff's motion for summary judgment is, therefore, granted.

## C. *Count Five*

In Count Five, plaintiff alleges that defendant's September 18, 1986 notice of termination/non-renewal violated Conn.Gen. Stat. § 42–1331(b) as not given one year before the March 1, 1987 termination.

### 1. *Preemption*

█ Defendant initially argues that § 42–133*l* (b) is preempted by the PMPA. In *Bellmore*, 783 F.2d at 304–06, the Court of Appeals ruled that § 42–133*l* (b) was not preempted. Defendant's novel effort to avoid *Bellmore* by seeking its reconsideration in light of the recent developments of the law is unavailing here. The argument must be made to the Second Circuit.

### 2. *Receipt of Notice*

Defendant next argues that, because it is undisputed that plaintiff knew as of March 1984 that defendant would not receive an extension of the underlying lease, he was provided well in excess of one year notice that his lease would not be extended. *See* Deposition of Paul Herman at 73, 75–76, 79, 169–70. Indeed, the record suggests that plaintiff began planning for the termination of his lease as early as January 23, 1986, *see* 1/23/86 Letter to Ed Davidson from Francis Sablone, and that he succeeded in securing an alternative site three miles away so as to be able to relocate his business the day after his lease with defendant expired. *See* Deposition of Paul Herman at 119, 138, 153. In response, plaintiff claims that defendant ignores the statutory requirement and the lease requirement of written notice. Whether he, in fact, suffered any loss of good will, he says, should be determined at a trial.

█ Contrary to plaintiff's representation, § 42–133*l* (b) does not require written notice. Unlike subsection (a) of § 42–133*l*, which repeatedly references the instances in which written notice must be given, *see* discussion in *Mobil Oil Corp. v. Karbowski*, 667 F.Supp. 927, 934–37 (D.Conn.1987), subsection (b) has no such requirement. Moreover, the absence of a requirement for written notice is consistent with the construction of subsection (b), not as a notice provision but as a substantive statute which entitles the franchisee to payment for loss of good will "if there had not been a sufficiently long period (one year) in which to recoup the good will." *Bellmore*, 783 F.2d at 305.

Thus, the franchisor has an economic incentive to provide its franchisees with ample notice of the forthcoming expiration of the franchise. By doing so, it thereby effectuates the Act's purpose of requiring the franchisor to deal openly with the franchisee. Consistent with this rationale, the Act also provides that, where no good will has been lost, or where the franchise has expired because of voluntary relinquishment or abandonment, no damages will be awarded. Simply put, payment for good will is a form of compensation required where the franchisee suffers a loss because the franchisor fails to give him sufficient time to plan for the eventual termination of the franchise. *Bellmore*, 783 F.2d at 305.

In this case, from almost the inception of the term of his franchise, plaintiff knew that it could not be extended beyond the term specified in the agreement. He planned for that event and he succeeded to some extent in maintaining some of the same customers he had when he operated Herm's Amoco. Deposition of Paul Herman at 25–26. In response to defendant's motion, plaintiff has not offered any citation to the record which would suggest a question of fact as to his knowledge of the termination date of the lease and the fact that it could not be renewed for over one year prior to its expiration. There is no evidence that suggests that defendant violated § 42–133*l* (b).

Plaintiff also argues that, by virtue of ¶¶ 16, 18, 26 of the Lease Agreement, defendant was obliged to provide him with one year's notice. Plaintiff's lease did not, however, provide for any extension because of options for renewal. Thus, although the

events involving the underlying lease and the communications which passed between the parties in relation thereto may not have been written, such does not constitute a breach of contract as renewal of the franchise was not covered under the contract. The Lease Agreement provided that it would end on February 18, 1987, or earlier upon ninety day notice by the lessee. Agreement at ¶ 25.

As the record reflects, no dispute but that plaintiff was provided at least one year notice that the lease was going to terminate on the day agreed, he is not entitled to good will damages under § 42–133*l* (b). Summary judgment shall, therefore, enter for defendant on Count Five.[3]

Accordingly, plaintiff's motion is granted as to Count One and denied as to Count Five. Defendant's motion is denied as to Count One and granted as to Count Five.

SO ORDERED.

---

**3.** In view of this result, it is unnecessary to discuss defendant's remaining argument that plaintiff does not constitute a franchise under the Connecticut Gasoline Dealer's Act.