**SERVICE ROAD GULF, INC.**

v.

**GULF OIL CORP., Irwin B. Singer, Trustee.**

**Civ. No. H–84–1247 (PCD).**

United States District Court, D. Connecticut.

Jan. 3, 1986.

Lawrence S. Hillman, Law Offices of Donald E. Weisman, Hartford, Conn., for plaintiff.

David A. Reif, Reif & Manke, New Haven, Conn., for defendant Gulf Oil.

Philip L. Steele, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, Conn., for defendant Singer, trustee.

### RULING ON PENDING MOTIONS

DORSEY, District Judge.

*Facts*

Plaintiff was a franchisee of defendant Gulf Oil Corporation ("Gulf") within the meaning of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2806.

On November 22, 1983, representatives of Gulf met with plaintiff and a representative of Atlas Oil Co. ("Atlas") to discuss an assignment of the franchise from Gulf to Atlas.

On November 28, 1983, Gulf executed a Quit Claim Deed transferring its rights, title and interest in and to the premises located at 51 West Service Road, Hartford—the site of plaintiff's service station—to defendant Irwin B. Singer, as trustee for his children. The deed contained the following covenant:

> In accepting this conveyance, and as part of the consideration therefor, Releasee [Irwin B. Singer, Trustee] acknowledges that Service Road Gulf, Inc. has a franchise, as defined in the [PMPA], with respect to the property covered by this conveyance. Releasee agrees that Releasee will, in all matters, act as though Releasee were a franchisor under the [PMPA], and Releasee shall not terminate or fail to renew the franchise or franchise relationship with Service Road Gulf, Inc. except as provided in the [PMPA].

Plaintiff's Complaint at 6.

On December 9, 1983, Gulf assigned the leases and accounts of certain customers, including plaintiff, to Elmwood Distributors, Inc. ("Elmwood"). Mr. Singer is president of Atlas and Elmwood. The assignment included the following:

> Assignee [Elmwood] acknowledges that the Contracts and Agreements are franchises, as defined in the [PMPA], with respect to the sale of motor fuels. Assignee agrees that he shall not terminate or fail to renew the Contracts or Agreements covering the sale of motor fuels, except as provided in the [PMPA]. Assignee agrees to indemnify and hold Assignor harmless from any and all claims ... asserted by the purchasers named in or represented by the attached Contracts and Agreements arising out of, or in any way connected with, the failure of Assignee to strictly comply with the provisions of the [PMPA]....

Third Party Complaint of Gulf at 2.

On December 21, 1983, Elmwood assigned its agreement with Gulf to Atlas. Plaintiff's rent for December 1983 was split between Gulf and Atlas.

On March 16, 1984, Atlas notified plaintiff that it was terminating plaintiff's franchise effective June 18, 1984.

Pending are defendant Singer's motions to dismiss, for attorney's fees, and for summary judgment.

*Discussion*

The pending motions raise a single issue: is Irwin B. Singer, Trustee, the plaintiff's "franchisor" within the meaning of the PMPA?

The PMPA defines "franchisor" as "a refiner or distributor ... who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(3). The word "franchise" means "any contract" between a refiner (or distributor) and a retailer (or distributor) "under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, assignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner...." *Id.* at § 2801(1)(A). The term "franchise" specifically includes "any contract under which a retailer or distributor ... is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the

sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner," *id.* at § 2801(1)(B)(i), and "any contract pertaining to the supply of motor fuel which is to be sold, consigned, or distributed [under a trademark owned or controlled by a refiner]." *Id.* at § 2801(1)(B)(ii).

Mr. Singer asserts that his relationship with plaintiff is clearly not that of franchisor/franchisee. There was no contract between Mr. Singer (in his capacity as trustee) and plaintiff for the sale or distribution of motor fuel sold under a trademark. *See Abadjian v. Gulf Oil Corp.,* 602 F.Supp. 874 (C.D.Cal.1984). There was no franchise fee imposed upon plaintiff by Mr. Singer, or a marketing plan for plaintiff, both of which are "essentially components of a franchise agreement." *Id.* at 879. Mr. Singer is neither a refiner nor distributor and has not acted as a refiner or distributor with respect to plaintiff. *See generally Farm Stores, Inc. v. Texaco, Inc.,* 763 F.2d 1335 (11th Cir.1985) ("Unless the parties meet the statutory definition of one of these terms [i.e., "refiner," "distributor," or "retailer"], there is no coverage under the PMPA"). Mr. Singer claims that the Quit Claim Deed executed in his favor by Gulf merely made him the owner of the *premises* where the plaintiff conducts its retail gasoline operations and that the *franchise* plaintiff had with Gulf—defined to include the original lease between plaintiff and Gulf as well as the agreements relative to the marketing of gasoline— passed from Gulf to Atlas (via Elmwood) by virtue of the respective assignments described in the statement of facts, *supra.*

Plaintiff's position is that, irrespective of the statutory definition, Mr. Singer became a "franchisor" on November 28, 1983, when he signed the Quit Claim Deed. The deed required Mr. Singer to "act as though" he were a franchisor, and in it Mr. Singer also agreed "not [to] terminate or fail to renew the franchise or franchise relationship with Service Road Gulf, Inc., except as provided in the [PMPA]." Plaintiff's Complaint at 6. Plaintiff asserts that neither Gulf's attempted assignment of the franchise agreements to Elmwood on December 9, 1983, nor Elmwood's attempted assignment of same to Atlas on December 21, 1983, were legal or binding in light of Gulf's prior agreement with Mr. Singer that *he* would act as plaintiff's "franchisor." Plaintiff, therefore, claims that the notice of non-renewal of its franchise was ineffective under the PMPA because the notice was given by Atlas, not Mr. Singer, Trustee.

The language in the Quit Claim Deed was not effective in creating a franchise relationship between plaintiff and Mr. Singer, Trustee. The limited purpose of the restrictive covenant insured that the new owner of the premises, Mr. Singer, would not be able to evict plaintiff for any reason not provided for in the PMPA. It is well established, for example, that termination of a master lease between a PMPA franchisor and the actual owner of the land upon which the service station is built, constitutes valid ground for non-renewal of the franchise agreement between the franchisor (sub-lessor) and the franchisee (sublessee). *Hifai v. Shell Oil Co.,* 704 F.2d 1425 (9th Cir.1983); *Veracka v. Shell Oil Co.,* 655 F.2d 445 (1st Cir.1981). Gulf, in the instant case, was trying to protect plaintiff to the extent of requiring Mr. Singer to take title to the premises subject to plaintiff's franchise rights, so that Singer could not take action as the property owner which would interfere with plaintiff's rights as defined in the PMPA. In the same way that a contract cannot exempt a franchisor from PMPA obligations, neither can a contract create them.

▋ Even if Mr. Singer effectively assumed the status of a franchisor, the notice issued met the requirements of the PMPA. The notification of non-renewal, though sent on behalf of Atlas, was signed by Mr. Singer, as president of Atlas. Although the notice provisions of the PMPA are to be strictly construed, *Escobar v. Mobil Oil Corp.,* 678 F.2d 398 (2d Cir.1982), to hold, as plaintiff argues, that Mr. Singer should have sent another notice to plaintiff, identi-

cal to the first, but without reference to Atlas, would elevate form over substance.

Accordingly, the motion to dismiss and the motion for summary judgment in favor of Irwin B. Singer, Trustee, are granted. The motion for attorney's fees is denied.

SO ORDERED.