**ROLECO SERVICE STATIONS, INC.,
and Tartan Oil Corp.,
Plaintiffs–Appellees,**

v.

**GETTY REFINING AND MARKETING
COMPANY, Defendant–Appellant.**

**No. 16, Docket 87–7253.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1987.
Decided Feb. 9, 1988.

David A. Luttinger, White Plains, N.Y. (Robert E. Fuller, Mark D. Litvack, White Plains, N.Y., on the brief), for defendant-appellant.

Before OAKES and KEARSE, Circuit Judges, and BONSAL, District Judge.*

KEARSE, Circuit Judge:

Defendant Getty Refining and Marketing Company ("Getty"), a refiner and marketer of branded motor fuel, appeals from a final judgment of the United States District Court for the Eastern District of New York, entered after a jury trial on damages before Leonard D. Wexler, *Judge*, awarding $46,162.70 to plaintiffs Roleco Service Stations, Inc. ("Roleco"), a company that sold petroleum products under the Getty trademark, and its parent Tartan Oil Corp., as damages resulting from Getty's termination of Roleco's franchise in violation of the Petroleum Marketing Practices Act ("PMPA" or the "Act"), 15 U.S.C. § 2801 *et seq.* (1982). On appeal, Getty challenges principally a 1984 order of the district court, Jacob Mishler, *Judge*, ruling that Getty had failed to follow the franchise termination procedures required by the Act and granting Roleco partial summary judgment on the issue of liability. Getty contends that because it was Roleco that terminated the franchise as it was entitled to do under the franchise agreements, the PMPA imposed no further obligations on Getty, and Getty was entitled to judgment dismissing the complaint. We agree and reverse the judgment of the district court.

## BACKGROUND

The following facts are not in dispute. On or about March 17, 1978, Getty and Roleco entered into a set of franchise agreements, including a "Dealer Contract" and a "Dealer Assistance Agreement," with respect to the sale by Roleco at its retail service station in Islip, New York, of

Carl S. Levine, Mitchel Field, N.Y. (Levine & Robinson, P.C., Mitchel Field, N.Y., on the brief), for plaintiffs-appellees.

* The Honorable Dudley B. Bonsal, Senior Judge of the United States District Court for the South- ern District of New York, sitting by designation.

Getty products under the Getty trademark. Paragraph 1 of the Dealer Contract provided that the franchise term was to be five years commencing on May 11, 1978, and continuing from year to year thereafter. It gave Roleco the right to terminate the franchise at any time by giving 90 days' prior written notice to Getty; it gave Getty the right to terminate the franchise by giving 90 days' prior written notice to Roleco, but only for good cause. Under the Dealer Assistance Agreement, the Dealer Contract was "subject to termination at the end of the initial period or any subsequent year, by either party upon thirty days prior written notice to the other."

On March 18, 1983, Roleco wrote to Getty with reference to the Islip station, stating as follows:

This letter shall serve as notice of cancellation of Dealer Contract covering the captioned location, same to be effective the close of business May 10, 1983.

Accordingly, Getty prepared to remove its signs, equipment, and underground storage tanks from the Islip premises on May 10, and so advised Roleco. Roleco asked Getty to leave the storage tanks in place and sell them to Roleco. Although the parties never agreed to such a sale, Getty agreed on May 9 to postpone removal of the tanks for 30 days in order to give Roleco time to secure replacements.

On May 11, 1983, Roleco sent Getty a letter purporting to revoke its March 18 notice of termination:

This will advise that any and all terminations, specifically including a certain letter dated March 18, 1983, by Roleco to Getty, are hereby rescinded and, in accordance with the Petroleum Marketing Practices Act, 15 U.S.C. § 2802, are null and void.

Getty responded by letter dated May 13, 1983, stating that it believed the franchise had been effectively terminated on May 10 and that Roleco's purported revocation on May 11 was of no effect. Getty reaffirmed its promise, however, not to remove its underground storage tanks until June 10.

Roleco commenced the present action for monetary and injunctive relief on May 19, 1983, alleging that Getty had wrongfully terminated the franchise relationship by insisting upon removing its tanks and equipment without (a) giving ninety days' prior notice and (b) providing Roleco with a summary statement of its rights under the PMPA, as required by 15 U.S.C. §§ 2802 and 2804. Roleco moved for a preliminary injunction to prevent Getty from terminating the franchise and removing its equipment. Its motion papers appended, *inter alia*, copies of both the Dealer Contract and the Dealer Assistance Agreement.

In a Memorandum of Decision and Order dated June 16, 1983 ("1983 Opinion"), Judge Mishler denied the motion, noting (1) that the Act restricts termination only by the franchisor, not by the franchisee, (2) that it had been the franchisee Roleco, not Getty, which terminated the franchise, (3) that Roleco's purported revocation of its termination notice had been ineffective, and (4) that because the franchise had ceased to exist on May 10, the PMPA was inapplicable to Getty's refusal thereafter to do business with Roleco. Thus, Judge Mishler held that Roleco had failed to demonstrate sufficiently serious questions going to the merits of the litigation to justify the granting of a preliminary injunction. On or about July 8, 1983, Getty removed its signs, tanks, and equipment from Roleco's premises.

In early 1984, Getty moved for summary judgment dismissing the complaint, arguing along the lines of Judge Mishler's 1983 Opinion. However, in a Memorandum of Decision and Order dated April 19, 1984 ("1984 Opinion"), Judge Mishler abandoned his earlier reasoning. Instead, he concluded that, although Roleco had "initiated" the termination, there had in fact been a bilateral agreement for nonrenewal, and that agreement triggered the provisions of the PMPA:

The issue in this case is whether Getty had to comply with th[e] notice provisions [of the PMPA] because Roleco initi-

ated the nonrenewal of the franchise agreement.

Roleco's letter dated March 18, 1983 notified Getty that it did not intend to renew the franchise agreement. Getty agreed by letter dated May 13, 1983 that the franchise agreement had ended May 10, 1983. Because the parties concurred in not renewing the franchise agreement, the nonrenewal was governed by [the PMPA].

1984 Opinion at 4. Judge Mishler ruled that § 2802(b)(2)(D) of the Act required Getty to provide Roleco with a copy of the nonrenewal agreement; that §§ 2802(b)(2)(D) and 2804(d) required it to give Roleco a summary of the PMPA; and that § 2802(b)(2)(D) gave Roleco a right to repudiate the nonrenewal agreement within seven days of receiving such documents. Since Getty, concededly, had provided Roleco with no such copy or summary, the court concluded that the statutory period in which Roleco was entitled to repudiate had never begun to run; that Roleco's May 11 letter had been effective to repudiate the termination; and that Getty's subsequent removal of its signs, tanks, and equipment was thus an unlawful termination within the meaning of the statute.

Accordingly, Judge Mishler denied Getty's motion for summary judgment, granted partial summary judgment to Roleco on the issue of liability, and ordered the parties to proceed to trial on the matter of damages. The damages trial, held before Judge Wexler, resulted in a jury verdict against Getty in the amount of $46,162.70.

This appeal followed.

## DISCUSSION

On this appeal, Getty argues principally that Judge Mishler's 1983 Opinion was correct and that the judgment against it should be reversed and judgment granted in its favor. We agree.

█ The PMPA was enacted to establish "minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel *by the franchisor or supplier* of such fuel." S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News 873 (emphasis added). The fundamental premise of the Act was that there was a disparity of bargaining power that resulted in the "vulnerability of the franchisee to the demands and actions of the franchisor," *id.* at 876. The Act was thus designed to provide "protection for franchisees," *id.* at 874; *see Checkrite Petroleum, Inc. v. Amoco Oil Co.,* 678 F.2d 5, 8 (2d Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 74, 74 L.Ed.2d 73 (1982). In order to reduce the franchisor's leverage over the franchisee, the Act prohibits the franchisor from, *inter alia,* terminating or failing to renew a franchise without giving the prescribed period of notice and providing the franchisee with specified information. *See, e.g.,* 15 U.S.C. §§ 2802, 2804. In § 2802(b)(2)(D), relied on by Judge Mishler, the Act forbids the franchisor to terminate the franchise pursuant to an agreement to terminate within 180 days thereof unless the agreement is in writing and the franchisor provides the franchisee with a copy of the agreement together with a summary of the pertinent PMPA provisions.

All of these provisions are restrictions on the franchisor. There are no comparable provisions in the PMPA restricting the powers of the franchisee. Nor would it be appropriate to read into the Act any restrictions on termination by the franchisee, since Congress's avowed intention was to protect the franchisee by restricting the franchisor; it evinced no intent to limit the rights or powers of the franchisee. Accordingly, where the dealership agreements give the franchisee the unilateral power to terminate the franchise under stated circumstances, we conclude that no provision of the PMPA curtails or limits that power.

From this conclusion, we reason that the effect of Roleco's March 18 notice of termination was to be assessed in light of the franchise agreements and traditional princi-

ples of contract law. Roleco argues that its notice of termination was not authorized by the agreements because the Dealer Contract required it to give 90 days' notice, and the March 18 letter was sent only 53 days prior to the announced date for termination. If that 90–day provision were the only termination provision agreed to by the parties, we might well agree that the PMPA's notice and repudiation provisions applied, for the purported termination would not have complied with the parties' agreement, and in order to be effective, Roleco's act would require some form of assent by Getty, either a concurrence in the termination decision or a waiver. While ordinarily a contracting party is entitled to waive a right given it in the contract, *see, e.g.,* 3A *Corbin on Contracts* § 759, at 513 (1960), it may be within the intendment of the PMPA to require that any such waiver with regard to termination or nonrenewal of a franchise be in writing and comply with the notice provisions of § 2802(b)(2)(D), for otherwise, the franchisee could be at his peril as the purported termination date passed. Without any response from the franchisor, the franchisee would not know whether or not the franchisor would thereafter treat the notice as a nullity and seek to hold it to the contract; yet an affirmative statement from the franchisor that the untimely notice would be accepted is sufficiently akin to an agreement to modify the original contract that it may well be that the PMPA would apply.

We need not decide here, however, whether the PMPA would have applied to a termination governed by a notice provision that required longer notice than was actually given, for the 90–day provision of the Dealer Contract was not the only termination provision to which the parties had agreed. In the Dealer Assistance Agreement, they had agreed that either party could terminate the franchise at the end of the initial five-year period or any anniversary thereof by giving 30 days' notice. We note that the 90–day provision, unlike the 30–day provision, does not contain the restriction that the termination date must be

the end of the original five-year term or its anniversary. Thus, reading the two provisions together in a way that gives effect to the parties' entire agreement, *see, e.g., Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.,* 760 F.2d 390, 395–96 (2d Cir.1985), it is plain that the parties agreed that if termination was desired at the end of the five-year term or on any anniversary thereof, only 30 days' notice was required; for termination to be effective on any other date, the longer period of notice was required.

Roleco's March 18 letter set the close of business on May 10, 1983, as the termination date, and this was precisely the end of the original five-year term. Thus, only 30 days' notice was required under the franchise agreements.

As 53 days' notice was given, the March 18 letter properly exercised a right given to Roleco by the franchise agreements. Nothing in the agreements placed any further restriction on Roleco's power to terminate as of May 10, 1983; no assent or other action by Getty was required. Getty had no power to—nor did it seek to—interfere with Roleco's exercise of this right. Roleco did not rescind its notice prior to the announced time of termination. Thus, at the close of business on May 10, the termination became effective. *See* 6 *Corbin on Contracts* § 1266, at 66 (1962).

■ Roleco's attempt to rescind its notice, which did not occur until May 11, was ineffective. Both parties had been relieved of their franchise obligations at the close of business on May 10, and the PMPA did not thereafter apply.

■ We reject the view stated in Judge Mishler's 1984 Opinion that Getty's May 13 letter, informing Roleco that Getty treated Roleco's May 11 letter as ineffective to revive the franchise, was a "concurrence" that became part of a bilateral agreement for termination governed by the PMPA. Since Roleco's March 18 notice complied with the franchise agreements and Getty's concurrence was not required by those

agreements, either the granting or the withholding by Getty of concurrence would have been a nullity.

■ We also reject Roleco's contention that its March 18 notice of termination somehow became ineffective as a result of Getty's May 9 agreement to postpone removal of the tanks until Roleco could obtain replacements. The document relied on by Roleco for this proposition is a letter dated May 10, referring to the May 9 agreement. Though the letter was signed by Getty, it was not signed in the space provided for acceptance by Roleco, and it bears a handwritten notation that the letter was "not sent." Even if it had been sent, it would not support Roleco's contention, for the document reflects only Getty's accommodation with regard to the tanks and contains no semblance of a suggestion that either Roleco or Getty sought to alter Roleco's unilateral decision to terminate.

We have considered all of Roleco's contentions on the termination issues and have found them to be without merit. For the reasons stated above, the complaint should have been dismissed.

In light of our ruling, we need not reach the other issues raised by Getty on this appeal.

## CONCLUSION

The judgment of the district court is reversed. The matter is remanded for the entry of judgment dismissing the complaint.